```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

ANTONIO L. SAULSBERRY,

    Petitioner,

vs.                                 No. 04-2736-Ma/P

DAVID MILLS,

    Respondent.

```
                     ORDER OF DISMISSAL
          ORDER DENYING CERTIFICATE OF APPEALABILITY
                            AND
          ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
```

Petitioner Antonio L. Saulsberry, Tennessee Department of Correction prisoner number 164034, an inmate at the West Tennessee State Penitentiary in Henning, Tennessee, filed a _pro se_ petition pursuant to 28 U.S.C. § 2254 on September 17, 2004, along with a motion seeking leave to proceed _in forma pauperis_. The Court issued an order on September 17, 2004 that granted leave to proceed _in forma pauperis_ and directed the respondent, within twenty-three (23) days, to file the state-court record and a written response to the petition. Respondent filed a motion to dismiss, along with portions of the state-court record, on April 5, 2005. Petitioner filed another document in further support of his petition on April 21, 2005. On October 20, 2005, the Court issued an order that,

inter alia, directed the respondent, for the second time, to file the complete state-court record and requested a statement describing the status of any state-court proceedings on the murder charge. Respondent filed additional portions of the state-court record on November 9, 2005. On November 10, 2005, counsel for respondent filed a statement about subsequent proceedings on the first degree murder indictment. On November 14, 2005, respondent filed additional portions of the state-court record.

I.   STATE COURT PROCEDURAL HISTORY

On February 14, 1997, after a jury trial in the Shelby County Criminal Court, Saulsberry and a codefendant, Franklin C. Howard, were convicted of premeditated first degree murder, especially aggravated robbery, and conspiracy to commit aggravated robbery. Saulsberry was sentenced to life imprisonment on the first degree murder count. Following a sentencing hearing, the trial court sentenced Saulsberry as a Range II offender to forty (40) years for especially aggravated robbery and ten (10) years for conspiracy, with all sentences, including the sentence of life imprisonment, to run consecutively. The Tennessee Court of Criminal Appeals affirmed Saulsberry's convictions and sentences for especially aggravated robbery and conspiracy to commit especially aggravated robbery, but reversed his first degree murder conviction

for insufficient evidence. State v. Saulsberry, No. 02C019710CR00406, 1998 WL 892281 (Tenn. Crim. App. Dec. 21, 1998).[1]

Saulsberry subsequently filed a postconviction petition pursuant to the then-current version of the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-201 to -222, in Gibson County on or about April 6, 2000[2] in which he contended that his trial counsel had rendered ineffective assistance in violation of the Sixth Amendment. After an evidentiary hearing, the post-conviction court dismissed the petition on the merits. The

---

[1] The defendants were indicted for first degree murder, murder committed during the perpetration of a robbery, and murder committed during the perpetration of a burglary. State v. Saulsberry, 1998 WL 892281, at *1. The jury was instructed to cease deliberating upon finding the defendants guilty of premeditated murder, so the jury did not render any verdict on the other homicide counts. Id. at *4 n.4. Counsel for the respondent has represented that

> the State is attempting to retry the petitioner on the untried count of first degree murder in the perpetration of a felony; the State is not attempting to try the petitioner for premeditated first degree murder; the petitioner is currently challenging on double jeopardy grounds the State's ability to try him on the charge of murder in the perpetration of a felony; and the trial has been stayed pending resolution of the petitioner's appeal [of the double jeopardy issue].

Statement Regarding Subsequent Proceedings on Premeditated First Degree Murder Indictment, filed Nov. 10, 2005, at 2.

Howard was convicted of the same charges and was sentenced to life imprisonment on the first degree murder count. He was sentenced as a Range I offender to twenty-five (25) years for especially aggravated robbery and six years for conspiracy, with all sentences to run consecutively. On direct appeal, the Tennessee Court of Criminal Appeals held there was sufficient evidence to sustain his conviction for first degree murder, State v. Saulsberry, No. 02C019710CR00406, 1998 WL 892281, at *1-*4, *6-*8 (Tenn. Crim. App. Dec. 21, 1998), but the Tennessee Supreme Court reversed on the ground that the jury was not properly instructed, State v. Howard, 30 S.W.3d 271 (Tenn. 2000). Howard was retried and convicted of both first degree premeditated murder and felony murder, and the Tennessee Court of Criminal Appeals affirmed. State v. Howard, No. W2002-01680-CCA-R3CD, 2004 WL 2715346 (Tenn. Crim. App. Nov. 18, 2004), perm. app. denied (Tenn. Mar. 21, 2005).

[2] In 2003, the Post-Conviction Procedure Act was reenacted at Tenn. Code Ann. §§ 40-30-101 et seq. without altering its substance.

Tennessee Court of Criminal Appeals dismissed the appeal for lack of jurisdiction on the ground that the postconviction petition was not timely filed. Saulsberry v. State, No. W2002-02538-CCA-R3-PC, 2004 WL 239767 (Tenn. Crim. App. Feb. 9, 2004), perm. app. denied (Tenn. June 1, 2004).

II. PETITIONER'S FEDERAL HABEAS CLAIMS

In this federal habeas petition, Saulsberry contends that his trial and appellate counsel rendered ineffective assistance, in violation of the Sixth Amendment.

III. ANALYSIS OF THE MERITS

Respondent has filed a motion to dismiss the petition on the ground that it is untimely. Twenty-eight U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall begin to run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made

>            retroactively applicable to cases on
>            collateral review; and
>
>    (D)    the date on which the factual predicate of the
>           claim or claims presented could have been
>           discovered through the exercise of due
>           diligence.
>
> (2) The time during which a properly filed application
>     for State post-conviction or other collateral
>     review with respect to the pertinent judgment or
>     claim is pending shall not be counted toward any
>     period of limitation under this subsection.

Application of these provisions in this case is fairly straightforward. State convictions ordinarily become "final" within the meaning of § 2244(d)(1)(A) when the time expires for filing a petition for a writ of certiorari from a decision of the highest state court on direct appeal. Bronaugh v. Ohio, 235 F.3d 280, 283 (6th Cir. 2000). In this case, the Tennessee Court of Criminal Appeals issued its decision on direct appeal on December 21, 1998. Any application for permission to appeal to the Tennessee Supreme Court was due sixty (60) days later, Tenn. R. App. P. 11(b), on February 19, 1999. Because Saulsberry had not filed an application for permission to appeal, his conviction became final on that date and the running of the § 2254 limitations period commenced.[3] Because Saulsberry did not file any collateral challenge to his conviction during the next year, the one-year limitations period

---

[3] Because Saulsberry did not file an application for permission to appeal to the Tennessee Supreme Court, he could not file a petition for a writ of certiorari with the United States Supreme Court. See S. Ct. R. 13.1 ("A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after the entry of the order denying discretionary review.").

5

expired on February 22, 2000.[4] This petition was purportedly signed on September 15, 2004 and, even if it were deemed to have been filed on that date, see Houston v. Lack, 487 U.S. 266 (1988); Miller v. Collins, 305 F.3d 491, 497-98 & n.8 (6th Cir. 2002); Towns v. United States, 190 F.3d 468, 469 (6th Cir. 1999) (§ 2255 motion), it would be time barred.[5]

The one-year limitations period applicable to § 2254 motions is subject to equitable tolling. Griffin v. Rogers, 308 F.3d 647, 652-53 (6th Cir. 2002); see also Dunlap v. United States, 250 F.3d 1001, 1004 (6th Cir. 2001) (equitable tolling also applies to § 2255 motions). Five factors are relevant to determining the appropriateness of equitably tolling a statute of limitations:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive notice of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in

---

[4] It is not necessary for this Court to consider whether Saulsberry's subsequent state postconviction petition was a "properly filed application for State post-conviction or other collateral review" within the meaning of 28 U.S.C. § 2244(d)(2) and Artuz v. Henderson, 431 U.S. 4 (2000), sufficient to toll the running of the limitations period, because it was not filed until after the limitations period had expired. Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) ("'The tolling provision does not . . . "revive" the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.'") (quoting Rashid v. Khulmann, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)); Owens v. Stine, 27 Fed. Appx. 351, 353 (6th Cir. Oct. 2, 2001) ("A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

[5] Section 2244(d)(1) provides that the limitations period begins to run from the latest of the four specified circumstances. In this case, however, an examination of Saulsberry's claims reveals no basis for concluding that the limitations period commenced at any time later than the date on which his conviction became final.

>     remaining ignorant of the legal requirement for filing
>     his claim.

Dunlap, 250 F.3d at 1008.[6]

The Sixth Circuit has repeatedly stated its view that "equitable tolling relief should be granted only sparingly." Amini, 259 F.3d at 500; see also Vroman v. Brigano, 346 F.3d 598, 604 (6th Cir. 2003); Jurado v. Burt, 337 F.3d 638, 642 (6th Cir. 2003).

>     Typically, equitable tolling applies only when a
>     litigant's failure to meet a legally-mandated deadline
>     unavoidably arose from circumstances beyond that
>     litigant's control. . . . Absent compelling equitable
>     considerations, a court should not extend limitations by
>     even a single day.

Graham-Humphreys v. Memphis Brooks Museum, Inc., 209 F.3d 552, 560-61 (6th Cir. 2000); see also King v. United States, 63 Fed. Appx. 793, 795 (6th Cir. Mar. 27, 2003); Johnson v. U.S. Postal Serv., No. 86-2189, 1988 WL 122962 (6th Cir. Nov. 16, 1988) (refusing to apply equitable tolling when pro se litigant missed filing deadline by one day). Thus, ignorance of the law by pro se litigants does not toll the limitations period. Price v. Jamrog, 79 Fed. Appx. 110, 112 (6th Cir. Oct. 23, 2003); Harrison v. I.M.S., 56 Fed. Appx. 682, 685-86 (6th Cir. Jan. 22, 2003); Miller v. Cason, 49 Fed. Appx. 495, 497 (6th Cir. Sept. 27, 2002) ("Miller's lack of knowledge of the law does not excuse his failure to timely file a

---

[6] This five-factor standard is identical to the test used to determine whether equitable tolling is appropriate in other contexts, including employment discrimination cases. Amini v. Oberlin College, 259 F.3d 493, 500 (6th Cir. 2001) (citing Dunlap); Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir. 1998).

habeas corpus petition."); <u>Brown v. United States</u>, 20 Fed. Appx. 373, 374 (6th Cir. Sept. 21, 2001) ("Ignorance of the limitations period does not toll the limitations period."); <u>cf.</u> <u>Jurado</u>, 337 F.3d at 644-45 (lawyer's mistake is not a proper basis for equitable tolling).[7]

Saulsberry cannot satisfy his burden of demonstrating that equitable tolling would be appropriate in this case. Although Saulsberry states that his attorney did not advise him of the limitations period for filing a state postconviction petition, neither ignorance of the law nor attorney errors provide a basis for equitable tolling.[8]

Saulsberry also suggests, in his April 21, 2005 filing, that his attorney misled him about his intention to file an application for permission to appeal to the Tennessee Supreme Court and argues that the running of the statute of limitations should have commenced on the date he learned his attorney was no longer representing him. Petitioner's 04/21/05 Filing at 9. Although it is possible that an affirmative misrepresentation by an attorney would

---

[7] <u>See also</u> <u>Cobas v. Burgess</u>, 306 F.3d 441 (6th Cir. 2002) ("Since a petitioner does not have a right to assistance of counsel on a habeas appeal . . . , and because an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations . . . , we are loath to impose any standards of competency on the English language translator utilized by the non-English speaking habeas petitioner.").

[8] Although the petitioner's response focuses on the reasons he did not timely file a state postconviction petition, those responses are relevant to the timeliness of this federal habeas petition. The limitations periods for the filing of a state postconviction petition and this federal habeas petition were running simultaneously, and the running of the federal limitations period would have been tolled had Saulsberry timely filed a state postconviction petition.

provide a basis for equitable tolling, Saulsberry's assertion is materially different from his testimony at his state postconviction hearing, where he asserted that his attorney rendered ineffective assistance by failing to file an application for permission to appeal to the Tennessee Supreme Court. At that hearing, Saulsberry testified that his attorney never told him he had a right to seek permission to appeal his convictions on the aggravated robbery and conspiracy charges. 12/04/00 Tr. at 6-8, 18 ("Yeah, we talked [about the retrial of the felony murder charge]. But we never talked about appealing the robbery and conspiracy, though."), 19 ("But, still, appealing the robbery/conspiracy never come up, though.").[9] Accordingly, the unsworn statements in the April 21, 2005 filing provide no basis for equitable tolling.[10]

---

[9] That transcript is Volume 2 of the documents filed by respondent on November 14, 2005.

Saulsberry's trial counsel, who also represented him on appeal and on the subsequent proceedings on the homicide counts, testified at the postconviction proceeding that he communicated verbally with Saulsberry about his right to file a pro se application for permission to appeal but did not believe there was any viable issue that could have been raised on the robbery and conspiracy charges in light of Saulsberry's statement to police. Id. at 27-31, 32-33.

[10] In holding Saulsberry's state postconviction petition to be time barred, the Tennessee Court of Criminal Appeals noted Saulsberry's testimony provided no basis for equitable tolling of the state statute of limitations. Saulsberry v. State, 2004 WL 239767, at *2 ("The petitioner acknowledges in this petition that his filing was outside the one year statute of limitations. His excuse for late filing, that he was unaware of the limitations period, neither fits within any of the three statutory exceptions nor calls for a due process-based waiver of the limitations bar.") (emphasis added; citing Williams v. State, 44 S.W.3d 464 (Tenn. 2001)). In his April 21, 2005 filing, Saulsberry attempts, for the first time, to fit the facts of his case into the framework of Williams v. State.

IV.  <u>APPEAL ISSUES</u>

The Court must also determine whether to issue a certificate of appealability ("COA"). The statute provides:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>   (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>   (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c); <u>see also</u> Fed. R. App. P. 22(b); <u>Lyons v. Ohio Adult Parole Auth.</u>, 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2254 petitioner may appeal without this certificate.

In <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were

"'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court has cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893). Thus,

> A prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the

11

debatability of the underlying constitutional claim, not the resolution of that debate.").[11]

In this case, there can be no question that this petition is time barred and, therefore, any appeal by this petitioner on any of the issues raised in this petition does not deserve attention. The Court, therefore, DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2254 petitions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a habeas case, and thereby avoid the $255 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952.[12] Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis,

---

[11] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

[12] The appellate filing fee will increase to $455 effective April 6, 2006.

the prisoner must file his motion to proceed <u>in</u> <u>forma</u> <u>pauperis</u> in the appellate court. <u>See</u> Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal <u>in</u> <u>forma</u> <u>pauperis</u> is DENIED. Accordingly, if petitioner files a notice of appeal, he must also pay the full $255 appellate filing fee or file a motion to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 27th day of March, 2006.

                                                                           _____
s/ SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE